S.E.C. v. Amah Good morning, Your Honor. May it please the Court. My name is Amah S.E.C. I would like to reserve two minutes for rebuttal. This appeal challenges a summary judgment ruling where the district court improperly equated a failed trading projection with intentional fraud. The district court granted summary judgment to the S.E.C. because it concluded, in hindsight, that the appealant's reduced profit projection of 3% was unachievable in the light of prior losses. In so doing, the court committed two reversible errors. First, it resolved a genuine dispute of material fact regarding the feasibility of that 3-5% target in the projection, ignoring evidence showing that previously well-known traders had achieved higher returns, which supported the projection at the time. Second, the court substituted its own judgment for that of a jury on the issue of Sienta. Under this court's holding in Slating v. American Express, a projection that turns out to be wrong is not of fraud unless the defendant had actual knowledge of its falsity at the time. By deciding the projection was impossible, the district court bypassed the strong inference requirement of the Bespeak's caution doctrine and assumed intent where the record shows only a good faith effort to navigate significant losses. The S.E.C. did not produce any witness or any document that showed actual knowledge that those projections were going to be wrong. All the losses were incorporated when the projections were made, and the starting point of those projections, which are in the record, started from the lower figures after the losses occurred. So, the people that received the projections already knew that there was a lower starting point. I ask the court to reverse this injustice. Thank you, Mr. Irma. You've reserved a couple minutes for rebuttal. Yes. Good morning, and may it please the court. Jordan Kennedy on behalf of the Securities and Exchange Commission, the final judgment of the district court should be affirmed. There is no dispute of material facts that Mr. Irma violated the securities laws when he lied to existing and prospective clients that his investment strategy would produce them high returns, even though he knew that their money was nearly gone and in any event. May I ask you about the rationale as to the meaning of the Advisor Act? Your Honor, the district court found that Mr. Irma had served, he admitted to serving as the investment advisor for the entire Lumine fund, which included both MOSI and non-MOSI IT clients, and so from this perspective, because the documents that Mr. Irma provided to prospective clients indicated and stated that this is his professional area of business, he was an investment advisor within the definition of the statute. And the district court obviously cites to the SEC rule. Do you understand it to be sort of adopting that rule, citing it as authoritative, deferring to it? How do you understand that? Your Honor, the district court relied on both the Commission's release and SECB-FIFE, where the First Circuit held that what matters is the expectation of profit, not whether one had actually received compensation at the time. Because in SECB-FIFE, the wrongdoer had the expectation of profit pursuant to a formula to be agreed upon in the future, that the Commission's release comports with that decision. Because that release holds that once a person meets the definition of compensation, that person is an advisor within the definition of the Advisor's Act, and that the Advisor's Act applies to the relationship between the advisor and his clients, regardless of whether or not they receive any compensation from them. Right, so that notion that once you've been compensated, you're always an advisor. That's right, Your Honor. We have to conclude that's the meaning of the statute in order to agree with that outcome? Not necessarily, Your Honor. However, the statute does read as an all-or-nothing. It doesn't seem to have any carve-outs for when someone would be an investment advisor sometimes, and when they wouldn't in other occasions. And from this perspective, as it pertains to this particular case, it wouldn't make any sense because Mr. Amai did purport and did admit in his answer, in his opposition to the Commission's complaint, that he served as the investment advisor. So it doesn't need to have this broad interpretation. As applied here, Mr. Amai is an investment advisor within the definition of the statute. I guess just to somewhat repeat my first question to make sure I understand. Do you understand the District Court's analysis of that to have been doing any kind of Chevron deference with respect to the SEC interpretation? Not necessarily, Your Honor. I think that the District Court's interpretation of the Commission's release does comport with how the statute has been viewed in other cases. So from that perspective, it need not get into the weeds of Chevron deference or any other type of deference because how the Commission interpreted or how the District Court interpreted the Commission's release comports with other cases who have decided this issue. So Mr. Amai would need to raise Loper-Bright in order to make the arguments that he's making? That's a fair point, Your Honor, but as Your Honor likely knows that Mr. Amai did not raise any such arguments. Right, but if it's not Chevron deference in the first instance, then there's no reason to raise Loper-Bright in encountering the argument, right? That's correct, Your Honor. And you said it didn't rely on Chevron deference? No, Your Honor. Seeing that there are no further questions, we ask the judgment of the District Court to adjourn. Thank you. Thank you, Mr. Bennett. Mr. Amai, you have two minutes for rebuttal. Thank you, Your Honors. The SEC counsel argues that because the appellant, Mr. Amai, previously advised three individuals under Lumine Fund, that meant that even when acting in a charitable, non-profit, non-compensated form for a charity that I had previously volunteered for at the time for probably over 25 years, and at the time I was also the treasurer in the United States, what I was doing for MUSI-IT was providing voluntary services. I was not compensated either in kind or in cash. Neither did I expect any compensation in the future. But that is quite clear, that to be a financial advisor, there must be a clear nexus between compensation and the advice given or the sale and purchase of securities that was known in this case. The SEC goes on to talk about expectation of profit. There was no expectation of profit. And the District Court judge clearly in the record, it shows that he incorrectly deferred to SEC interpretation, broad interpretation of the act. That was not the intention of that act. Thank you, Your Honors. Thank you, Mr. Amai. Thank you both. We'll take the case under advisement.